UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES

v. 403CR112

INGERBERTH C. BAIRD

ORDER

I. INTRODUCTION

Following a 2003 indictment accusing Nicolette and Ingerberth Baird of, *inter alia*, conspiracy and mail fraud, doc. # 1, the Court dismissed Nicolette from the case on the Government's motion (5/2/04 entry), before a jury found Ingerberth[1] guilty (on 1/29/08) of: conspiracy in violation of 18 U.S.C. § 371; of filing a false claim against the government in violation of 18 U.S.C. § 287; and of committing mail fraud in violation of 18 U.S.C. § 1341. Doc. # 87. Ingerberth now awaits sentencing.

Shortly after his conviction, his appointed counsel moved the Court to allow him to withdraw from representing him. Doc. # 88. The trial judge (the Hon. John F. Nangle) denied that motion. Doc. # 90. Judge Nangle has since passed away and, following reassignment of this case to the undersigned, doc. # 96, counsel moves for reconsideration, doc. # 97, as well as "clarification" of an earlier Order. Doc. # 93.

II. BACKGROUND

A. The Crimes

In 2002, Ingerberth and Nicolette conspired to fraudulently collect on life insurance-based policies by having Nicolette travel to Trinidad and Tobago[2] (Trinidad) and "die" there. Doc. ## 94-95. Ingerberth was in the military at the time, so an armed-services (spousal death) policy was in effect, as well as Nicolette's teacher-based benefits. Doc. # 94 at 25-87 (teacher's benefits); 88-123 (military benefits). The private insurer detected the fraud before any payout; the military didn't. *Id.* at 76, 113, 114; doc. # 95 at 214, 220.

B. Nicolette

Nicolette was arrested first and prosecuted in 2004 (Ingerberth then was still a fugitive, doc. # 28 at 4). She pled guilty at one point, doc. # 20; # 28 (F.R.Cr.P. 11 guilty plea hearing), successfully withdrew that plea, doc. # 31, had her trial scheduled for 4/19/04, doc. # 33, but later enjoyed dismissal of all charges. *See* 4/22/04-dated docket notation, entered on doc. 5/2/04 entry ("DISMISSAL of Count(s) on Government Motion as to Nicolette Baird party Nicolette Baird Counts Dismissed: Nicolette Baird (2) count(s) 1, 2, 3, 4"). She later pled guilty to an Information filed in a separate proceeding, *U.S. v. Nicolette Baird*, 404CR110, doc. # 9 (4/22/04-entered Judgment convicting her for violating 18 U.S.C. § 3 ("Accessory after the fact")).

C. Ingerberth's Appointed Counsel

Following Ingerberth's 2007 extradition from Trinidad and arrest, doc. # 39, the Court appointed attorney Saunders Aldridge to represent him. Doc. # 37. Aldridge filed an appearance on 7/18/07. Doc. # 40. Problems between attorney and client arose almost immediately. For starters, Ingerberth attempted

---

[1] Because both defendants shared the same last name by way of marriage, the Court will refer to each by their first name for convenience.

[2] "Trinidad and Tobago is a unitary [Caribbean area] state, with a parliamentary democracy modeled after that of Great Britain." http://www.state.gov/r/pa/ei/bgn/35638.htm (site as of 9/15/08).

to litigate the case himself, thus venturing down the otherwise impermissible, hybrid-representation path. *See, e.g.*, doc. # 53 (Ingerberth's 7/28/07 letter to Chief Judge William T. Moore, filed under seal on 8/3/07); doc. # 56 (Ingerberth's 10/24/07 motion for an "evidentiary hearing" to uncover "invented" evidence); doc. # 57 (Order denying motion # 56 due to "hybrid" rule).[3]

**D. Continuance**

Aldridge, meanwhile, filed on Ingerberth's behalf the customary form and "place-holder" defense motions, doc. ## 44-52, including a skeletal suppression motion. Doc. # 49. With trial set for 11/19/07, *see* 10/29/07 docket entry, then later reset for 11/14/07, *see* 11/5/07 docket entry, the *Government* moved for a continuance on 11/8/07, arguing that:

The charges in this case against Mr. Baird involve a scheme to defraud the government and private insurance companies of life insurance proceeds from policies covering Mr. Baird's wife, Nicolette. As the indictment sets forth more fully, the scheme involved the faked death of Nicolette Baird in Trinidad, the submission of faked Trinidad death certificates and accident reports to the U.S. Army, the Liberty County [Georgia] Board of Education [Nicolette had worked as a teacher in that school system], and insurance companies, and the eventual relocation of Mr. Baird to Trinidad with nearly $100,000 in proceeds of the fraud.

Doc. # 60 at 1. Complications arose because the case involved several government witnesses who were active duty military personnel; other witnesses who were residents of Trinidad, etc. *Id.* at 3. The Government also had "been informed by defense counsel that Mr. Baird is in the process of retaining new counsel, to be completed by next Monday, according to Mr. Baird. The government presumes that any such new counsel will desire more than two days to prepare for this trial." *Id.* at 3.

Judge Nangle granted the motion to continue. Doc. # 60. In observing the Speedy Trial Act, he expressly noted Baird's then-expressed intent to *retain* new counsel:

The Government has filed a Motion for Continuance, indicating that, due to a number of factors, such as the location of witnesses in Trinidad and the passage of time, additional time is necessary to prepare for trial in this case. The Government also indicates that Defendant is currently in the process of *retaining new counsel*, and that new counsel will

---

[3] Validating the forewarned dangers of unsolicited letters to federal judges, *see In re Unsolicited Letters to Federal Judges*, 120 F.Supp.2d 1073 (S.D.Ga. 2000), Ingerberth sent a steady stream of personal letters to Judge Nangle, Judge Moore, Magistrate Judge G.R. Smith, and a deputy clerk -- mostly complaining about Aldridge and the Government's "invented" evidence against him. He also requested replacement counsel. *See* doc. ## 100, 103 (8/19/07 and 8/21/07 Ingerberth letters to Judge Moore; 8/26/08 Ingerberth letter to Magistrate Judge Smith; 8/28/07 Ingerberth letter to Deputy Clerk S. Flanders;10/21/07 Ingerberth letter to Magistrate Judge Smith; 11/15/07 letter to Judge Nangle; 11/15/07 letter to Judge Moore; 1/8/08 letter from Judge Nangle to Ingerberth, attaching a copy of Ingerberth's 1/4/08 letter to Judge Nangle, and with copy sent to both prosecution and defense counsel; 4/9/08 and 4/25/08 Ingerberth letters to Judge Moore (whose written notation at the top of each letter denotes that Judge Moore referred them, as with all such prior letters, to Judge Nangle), followed by Judge Nangle's 4/30/08 response letter to Ingerberth's 4/9/08 letter; 7/16/08 Ingerberth letter to Judge Moore (complaining about "missing pages of my trial transcripts")). To complete the record of this case, the Court has also included 12/10/03 and 1/16/04 Nicolette Baird letters to Judge Nangle. *See* doc. # 104.

also need time to prepare for trial. [¶] The Court agrees that, under the circumstances, additional time is necessary for the *parties* to prepare and try this case.

Doc. # 61 at 1 (emphasis added); *see also* doc. # 94 (trial transcript) at 7-11.

### E. Judicial Inquiry

The record contains no evidence of any new counsel then in the offing. In any event, Judge Nangle next conducted an inquiry on 11/14/07. Doc. # 98; *see also* doc. # 62 (hearing minutes). During that conference, he inquired of any problems between Ingerberth and Aldridge. Aldridge cited attorney-client communications problems (missed phone calls, etc.), *id.* at 2-5, 8, and Ingerberth complained that Aldridge failed to challenge the Government for advancing "invented" (fabricated) evidence against him. *Id.* at 6 (Ingerberth says he detected this in the discovery materials shown to him in jail). In light of what was being said at that hearing, as well as what Ingerberth had complained of by letters sent by that point in time, *see supra* n. 2, The judge inquired:

> THE COURT: What is the problem with Mr. Aldridge, who has spent a lot of time? You know, I have to appoint or [Magistrate] Judge Smith appoints lawyers. I don't do that reckless or out of hand. They are carefully selected. And I don't dismiss them very often. [¶] He has put obviously a fair amount of time in this case. What is the problem with him going ahead and representing you in this trial?
>
> DEFENDANT: Sir, as I said before, going through my discovery packet, I found a lot of evidence that has been invented by the government.
>
> THE COURT: That is a question for the trial. Give me an example of an invented piece of evidence, and I will tell you how it is handled.

Doc. # 98 at 11. Ingerberth started to explain that "Nicolette had an insurance policy," and that "documents were requested from a school, and dates were changed," etc., when Aldridge unsuccessfully requested that the prosecution depart given Ingerberth's "analysis of trial evidence." *Id.* at 12-13.

Judge Nangle then cut Ingerberth off and noted that attorney-client disagreements over trial strategy are not uncommon, so Ingerberth supplied no basis for a change of appointed counsel. *Id.* at 14-18. Aldridge then successfully sought leave of Court to confer with Ingerberth to ensure that the perceived "rift" was not irreparable. *Id.* at 17-18. Before they could confer, however, Ingerberth succeeded in moving the judge to review the "invented" documents. *Id.* at 20-22 (the judge articulated what was before him while reviewing the insurance documents). After doing so, with the prosecution still present, Judge Nangle elicited from Ingerberth his similar dispute with other documents. *Id.* at 22. Afterwards, the judge commented:

> Okay. Let me tell you another thing. I don't know -- you know, you get a lawyer and in some questions lawyers will disagree. But on most matters, I'm going to say I could appoint ten lawyers for you and they may all say the same thing Mr. Aldridge says. And all we're doing is wasting money, spending time, et cetera.

*Id.* at 22-23. Judge Nangle then re-instructed Aldridge to meet with Ingerberth, then paused:

> I point out again, Mr. Baird, there are

3

times -- I've tried a lot of cases. I have been a judge 34 years. I have tried more cases than you can imagine, hundreds of them. And there are times when lawyers and clients don't get along. I call them up to the bench, work it out. I have never had any case in my history as a judge where I have been reversed or told I was wrong in working out -- and I have had some tough matters. Guys like you want to defend themselves. You are entitled to do that. It is a terrible mistake, but then I've got to guide you through it.

*Id.* at 24.

In an 11/14/07 letter to Judge Nangle, Aldridge cited a "very amicable meeting" with Ingerberth but nevertheless Ingerberth "renew[ed] his request that I be replaced as his appointed counsel." Doc. # 105. This letter, which supplied no reasons for Ingerberth's renewed request, was carbon copied to Ingerberth and the prosecutor. *Id.* Judge Nangle wrote back to Aldridge on 11/16/07, concluding that new counsel was not warranted, doc. # 101, and on 11/20/07 Aldridge responded that he would govern himself accordingly. Doc. # 102.

In a 1/4/08 letter to Judge Nangle, Ingerberth listed "Requested [defense] Persons to Testify" and complained that Aldridge informed him that Aldridge "may not be able to assist me with copies of my extradition papers." Doc. # 103 at 2-3 (attached to Judge Nangle's response 1/8/08 letter to Ingerberth). Ingerberth sought "new discovery . . . relevant to my extradition." *Id.* at 3. In his 1/8/08 response letter, Judge Nangle (carbon-copying counsel for both sides) directed counsel to file "briefs concerning the following: 1) The question of extradition, etc. 2) The relevance of the prospective witnesses listed by Mr. Baird." *Id.*

The Government complied. Doc. # 66 at 1 ("The government does not know the contours of the legal or factual arguments that Defendant desires to advance by calling the witnesses he identifies, therefore it is difficult for the government to opine as to the relevance of those witnesses to the Defendant's defense"); Doc. # 67 at 1 ("The government does not know the factual or legal basis on which Defendant wishes to challenge his extradition from Trinidad").

Aldridge insisted that he was not appointed to represent Ingerberth on extradition matters. Doc. # 68 at 1; *see also id.* at 2 ("The discovery provided by the Government indicates that Mr. Baird waived extradition"). And he refrained from commenting on Ingerberth's "relevant" witnesses. Doc. # 68 at 3; *see also id.* ("The undersigned requests clarification of the Court's Directive. I know who each of the persons is and have communicated with Mr. Baird concerning each").

F. **Another Continuance Motion**

On 1/25/08 (thus, on the eve of the 1/28/08-scheduled trial), Aldridge filed on Ingerberth's behalf motions to suppress evidence and to continue the trial while the suppression motion was pending. Doc. ## 72, 73. Ingerberth had been questioned in Trinidad by an American FBI agent, but that country's law, Aldridge alleged, required a sort of "super-*Miranda*" warning that had not been given. Doc. # 73. Defense counsel sought to exploit this "just discovered" argument in his eve-of-trial suppression motion. Doc. # 73. Unsurprisingly, the Government opposed on untimeliness and waiver grounds, doc. # 74, and Judge Nangle denied both motions procedurally (they were untimely) and on the merits. Doc. # 78.

4

### G. Aldridge's Withdrawal Motion

A jury found Ingerberth guilty on 1/29/08. Doc. # 87. Aldridge subsequently moved to withdraw from representing Ingerberth. Doc. # 89. He cited only Ingerberth's dissatisfaction with him, and desire for replacement counsel. *Id.* Judge Nangle denied the motion. Doc. # 90. He preliminarily noted that

> [d]efendant has not moved the Court for substitution of either retained or appointed counsel, *nor* has he moved to proceed *pro se* and knowingly waived his right to counsel on the record. The Court notes that, to the extent that Defendant's letter could be construed as a Motion to Substitute Counsel, or Defendant filed such a Motion, it would be denied for the reasons discussed herein.

*Id.* at 2 n.3 (emphasis added). The judge then referenced Ingerberth's letters and the 11/14/07 hearing:

> During the pre-trial pendency of this case, Defendant on several occasions wrote the Court directly regarding counsel's performance; counsel also indicated that he had experienced some difficulty communicating with his client. Accordingly, the Court held a hearing to address the matter. The Court's discussion with Defendant and counsel revealed that, while disagreements arose on how certain issues should be handled, the overall attorney-client relationship was satisfactorily intact, and Mr. Aldridge's representation of Defendant has continued.

*Id.* at 2-3 (footnote omitted). Judge Nangle later concluded:

> Mr. Aldridge's thorough familiarity with the case is such that it would frustrate "the efficient and orderly administration of justice" to allow him to withdraw at this juncture. Despite Defendant Baird's position on the issue, the Court sees no compelling reason why Mr. Aldridge cannot adequately handle the matters pertaining to sentencing. To this point Mr. Aldridge has handled his work herein in a very fine fashion. Accordingly, appointed counsel will continue to represent Defendant in this case. Should counsel or Defendant wish to file a renewed Motion to Withdraw *after* sentencing, they may do so.

*Id.* at 4 (emphasis added).

## II. ANALYSIS

### A. Reconsideration

With Judge Nangle's passing, but before sentencing, Aldridge seeks reconsideration. Doc. # 97. He now emphasizes what Judge Nangle then emphasized: "Mr. Baird has made an unequivocal decision that he does not wish to be represented by the undersigned, but he has *not* specifically expressed a desire to exercise his constitutional right to proceed *pro se.*" *Id.* at 1 (emphasis added). Aldridge then cites the steady stream of Ingerberth letters sent behind his back to judges on this Court, as well as Ingerberth's failure to return his telephone calls, much less assist him in pre-sentencing matters. Doc. # 97 at 1-4.

Citing *U.S. v. Garey*, ___ F.3d ___, 2008 WL 3850284 (11th Cir. 8/20/08) (en banc) (a valid waiver of counsel may occur not only when a cooperative defendant affirmatively invokes his right to self-representation, but also when an uncooperative defendant rejects the

5

only counsel to which he is constitutionally entitled, understanding his only alternative is self-representation with its many attendant dangers) and *Jones v. Walker*, ___ F.3d ___, 2008 WL 3853313 (11th Cir. 8/20/08) (en banc), Aldridge insists that Ingerberth, "by his conduct," has rejected appointed counsel as clearly as did Garey in *Garey*, doc. # 97 at 7, so this Court should, as required by *Garey*, instruct Ingerberth "concerning self representation." *Id.*

*Garey*'s bottom line: "it is possible for a valid waiver of counsel to occur not only when a cooperative defendant affirmatively invokes his right to self-representation, but also when an uncooperative defendant rejects the only counsel to which he is constitutionally entitled, understanding his only alternative is self-representation with its many attendant dangers." 2008 WL 3850284 at * 8.

Put another way, "when an indigent defendant rejects competent, conflict-free counsel, he may waive his right to counsel by his uncooperative conduct, so long as his decision is made with *knowledge* of his options and the consequences of his choice." *Id.* at * 9 (emphasis added); *see also Meriwether Chatman*, 07-10393, Slip Op. at 26-27 (11th Cir. 9/9/08) (unpublished).

Here the record shows that, operating without the benefit of *Garey*, Judge Nangle never did squarely impose "the *Garey* choice" upon Ingerberth: Either proceed *pro se*, accept appointed counsel, or find (and pay for) his own. Instead, and in an understandable effort to thwart Ingerberth's manipulations, the judge simply inquired and found no cause to grant the defendant's request for replacement counsel. *See* doc. ## 90, 98. *Garey* sets the new standard:

When a defendant rejects his court-appointed counsel or otherwise engages in behavior that creates tension between his right to counsel and his right to self-representation, a district court does not compromise the defendant's free choice by presenting him with accurate information regarding his lawful choices *and asking him to choose between them*. And, when an indigent defendant rejects competent, conflict-free counsel, he may waive his right to counsel by his uncooperative conduct, so long as his decision is made with *knowledge* of his options and the consequences of his choice.

*Garey*, 2008 WL 3850284 at * 9 (emphasis added).

Here Ingerberth never expressly asked on his own to proceed *pro se*, but simply complained -- constantly at that -- about Aldridge's representation, thus sought replacement, and took various steps to undermine counsel's representation (*e.g.*, back-channeled letters, complaining behind his back, refusing to cooperate, communicate, etc.). Yet, the Court never confronted him with the "*Garey* choice," nor ensured that the record reflect his "*knowledge* of his options and the consequences of his choice." *Id.* at * 9 (emphasis added).

The Court thus will now conduct a hearing and put the *Garey* choice to him. At that time, the Court may also inquire whether Ingerberth's actions throughout this case meet what *Garey* declined to address: forfeiture of one's his "right to counsel by engaging in conduct that is highly disruptive or abusive." *Id.* at * 13 n. 5 (citing *U.S. v. McLeod*, 53 F.3d 322, 325 (11th Cir. 1995) (Defendant who is abusive toward

his attorney may forfeit his right to counsel).[4]

## B. Unsolicited Letters

In the meantime, the undersigned calls on the rest of this Court's bench to join in banning unsolicited letters to federal judges. *See In re Unsolicited Letters to Federal Judges*, 120 F.Supp.2d 1073 (S.D.Ga. 2000). As explained in that and subsequent cases, letters sent to judges can get lost (it is the duty of all *litigants* to deliver what they want in the record of their case with the *Clerk of Court*, not the judge) or otherwise fail to make it into the record. They can also enable a host of other ills (*e.g.*, inmates seeking to evade filing fees and successive-filing sanctions). Finally, as is the case here, letter-writing can undermine an attorney's bona fide efforts to zealously represent his client (*e.g.*, foster a lack of trust, etc.).

Worse, letters can enable criminal defendants like Ingerberth to try and game the system. Nothing that he said in his letters could not be said in a motion filed with the *Clerk*. Indeed, had Ingerberth been cut off from sending such letters and required to present his arguments through a motion, the Court likely would have rejected his first motion (bearing the content of his first letter) as an impermissible hybrid. That, in turn, would have forced Ingerberth to either accept Aldridge as his counsel or file a "motion to proceed *pro se*."

At that point, any judge on this Court would have conducted a hearing to assure that his waiver of his right to a free counsel was knowing and intelligent. Had Ingerberth then attempted to travel the route the defendants took in *Garey, Jones* and *Meriwhether* (*i.e.*, had he refused to expressly waive his right to counsel and elect to proceed *pro se*), then likely a clean record would have been generated here, rather than the letter-ridden mess confronting the Court here. *See, e.g.*, doc. # 99 at 9 (Judge Nangle referencing a "12/27/07" letter[5] that is *not* in this Court' record); doc. # 97 (Aldridge's motion attachments of *some* of his client's letters, suggesting that he may not even be aware of those now docketed at ## 100, 103, and enumerated in n. 2 *supra*). It is, of course, court's duty to ensure that the record reflect *all* filings and proceedings aimed at influencing judicial results.[6]

---

[4] *See also Gilchrist v. O'Keefe*, 260 F.3d 87, 97 (2d Cir. 2001) (upholding a state court ruling that a defendant had forfeited his constitutional right to counsel when he punched his attorney); *U.S. v. Goldberg*, 67 F.3d 1092, 1094 (3d Cir. 1995) ("[T]here are circumstances in which the dilatory tactics of a defendant can amount to a forfeiture of his right to counsel..."), cited in S. Diaz, *STATE V. HAMPTON: ADDRESSING FORFEITURE OF THE RIGHT TO COUNSEL BY EGREGIOUS CONDUCT*, 47 ARIZ.L.REV. 837, 840 n. 48 (2005).

[5] Following a colloquy wherein Judge Nangle informs Aldridge that Ingerberth had been sending letters to himself and to Judge Moore, Judge Nangle references one of them:

> THE COURT: Okay. And it sets out — let's look at the date — I'm looking at some date. There's 12-22-2007. This is to Judge Moore. The subject is, request for documents, but he's been complaining about documents, and he sets out in here — I'm sure you're familiar pretty much with what's he talking about, Mr. Aldridge —
>
> MR. ALDRIDGE: — No, sir, I have no idea what he's talking about. I haven't seen the letter.

Doc. # 99 at 9. The Court is unable to locate the 12/27/7 letter.

[6] For example, all

> bench and chambers conferences are subject to the requirements of the Reporter's Act[, 28 U.S.C. § 753]. *See*

Thanks to *Garey*, incidentally, future defendants who file a "motion for new counsel" can be promptly brought before the Court and, where warranted, compelled to make the "*Garey* choice."

**C. The Rock**

Aldridge obviously is caught between a rock and a hard place. He has shown that his client has been uncooperative, and has been obstructing his efforts to, for example, mitigate sentencing and ensure pre-sentence reporting accuracy. For the benefit of the bar, counsel in similar situations should (1) file a "*Garey* choice" motion, as Aldridge has just done; and (2) document their clients' obstructions, for it is the client who shall live with whatever prejudice his bad behavior produces, not counsel. *See McLeod*, 53 F.3d at 325-26.

If Ingerberth does not want his attorney to assist in sentence mitigation, for example, then that is his choice to make -- and live with. It violates no attorney-client duty to refuse a client's manipulations aimed at obviously nefarious results (*e.g.*, setting up some sort of downwind ineffective-assistance claim; co-opt counsel to advance perjurious testimony or fraudulent documentation before the court).

Indeed, if a client frustrates counsel's efforts to assist his case, then it is the client who shall live with the consequences, not his lawyer. And counsel should, as Aldridge has done here, document all forms of uncooperation and obstructionism. *Garey* makes clear that indigent defendants do *not* get appointed counsel of their choice, and they may not misbehave in order to force that result. In fact, the indigent defendant's *only* choice -- absent a good-cause (*e.g.* conflict of interest) showing[7] -- is to either proceed with appointed counsel or proceed *pro se*. Courts, meanwhile, must ensure that such choice is knowingly and intelligently made, and do so *on the record*.

---

*U.S. v. Sierra*, 981 F.2d 123, 127 (3d. Cir.1992); *United States v. Nolan*, 910 F.2d 1553, 1559-60 (7th Cir.1990). This is a mandatory rule, and it is the duty of the trial court rather than the parties, to meet the requirements of the Act.

*DeLuca v. U.S.*, 243 F.Supp.2d 984 (E.D.Mo. 2003); *see also* 2 SMOLLA & NIMMER ON FREEDOM OF SPEECH § 25:8 (Apr. 2008) ("The 'mere risk of embarrassment alone may be trumped by the public's interest in being able to ascertain how and why judges and other government officials do what they do'") (*quoting U.S. v. Bradley*, 2007 WL 1703232 (S.D. Ga. 2007) (unpublished)); *U.S. v. Alcantara*, 396 F.3d 189, 202-03 (2d Cir. 2005) (conducting a proceeding in judge's robing room violated the public and press's First Amendment rights), cited with approval in *U.S. v. Ochoa-Vasquez*, 428 F.3d 1015, 1028 (11th Cir. 2005). Because "off-the-record" discussions were not included in the transcripts currently docketed at ## 94-95, the undersigned directs the Court Reporter to promptly file Amended Transcripts including same.

---

[7] As the *Garey* court explained:

> Good cause in this context means a fundamental problem, "such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Young*, 482 F.2d 993, 995 (5th Cir.1973). In practical terms, then, defendants who lack the means to hire a private attorney must either accept the counsel appointed to represent them or represent themselves.

*Id.*, 2008 WL 3850284 at * 7 (footnote omitted); *see also id.* at * 13 ("Of course, if a defendant establishes counsel is incompetent or suffers from an actual conflict of interest, the defendant is entitled to the appointment of substitute counsel").

## III. CONCLUSION

For that reason, and because Judge Nangle did not have the benefit of *Garey*'s guidance, the Court **GRANTS** attorney Saunders Aldridge's reconsideration motion, doc. # 97, and the Deputy Clerk shall promptly schedule a "*Garey*" hearing.

Finally, motion # 93, which in substance seeks reconsideration of Judge Nangle's 3/25/08 Order on the availability of a trial transcript so that Ingerberth can refute perjury-enhancement allegations, is **DENIED** as moot (the Court is informed that a free transcript has been furnished to the defense). That portion of motion # 93 that objects to Judge Nangle's characterization of defendant's "continuance" contention, 3/11/08 Order at 1 n.2, is **DENIED** as frivolous (the record speaks for itself, and reconsideration motions should be limited to F.R.Civ.P. 61 prejudice, which this motion fails to show).

This 15 day of September, 2008.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA