UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| INGERBERTH C. BAIRD, | ) | |
| Movant, | ) ) ) | |
| v. | ) ) | Case No. CV410-229 CR403-112 |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Ingerberth Baird moves, over the government's opposition, for 28 U.S.C. § 2255 relief. (Doc. 1.[1]) For the following reasons, his motion should be **DENIED**.

I. BACKGROUND

In 2003, Baird and his wife Nicolette were indicted by a federal grand jury on charges of conspiracy, false claims, and mail fraud, all

---

[1] Unless otherwise noted, citations are to the docket in Baird's civil case, CV410-229. "Cr. doc." refers to documents filed under his criminal case, CR403-112. Additionally, page references are to the CM/ECF screen page rather than the referenced document's own internal pagination.

arising out of a scheme to fake Nicolette's death in Trinidad to collect life insurance proceeds. (Doc. 1 at 1; cr. doc. 1.) Baird was tried by a jury and found guilty of all charges (excepting one mail fraud count, which the government had earlier dismissed). (Cr. doc. 87 (verdict); cr. doc. 81 (dismissal of count 3 mail fraud charge).) He was sentenced to 60 months' imprisonment on the conspiracy and false claims charges and a 70 month concurrent sentence on the mail fraud count. (Cr. doc. 115.)

On appeal, Baird argued that the evidence was insufficient to support his conviction and that the sentencing judge abused his discretion by imposing his sentence. *United States v. Baird*, 348 F. App'x 442, 443-44 (11th Cir. 2009). The Eleventh Circuit disagreed with Baird and affirmed his conviction and sentence. *Id.* Thereafter, he filed the present § 2255 motion, asserting the following grounds for relief:

(1) ineffective assistance of counsel ("IAC") at trial and sentencing by his attorney, Saunders Aldridge;[2]

---

[2] Baird raised the trial and sentencing errors separately, in Grounds 1 and 4. The Court has combined them into a single ineffective assistance of counsel claim.

(2) the prosecution withheld favorable evidence; and

(3) the prosecution changed and invented documents used in obtaining the conviction.

(Doc. 1 at 4-5.)

## II. ANALYSIS

Since Grounds 2 and 3 are procedurally barred, the Court will dispose of them before addressing his Ground 1 ineffective assistance of counsel claim.

### A. Grounds 2 and 3

Grounds 2 and 3 are procedurally defaulted since Baird never raised them at trial or on appeal. It is well established that a § 2255 movant cannot use a collateral attack as a "surrogate" for a direct appeal. *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004); *see Stone v. Powell*, 428 U.S. 465, 478 n.10 (1976) ("28 U.S.C. § 2255 will not be allowed to do service for an appeal"). The courts have crafted the procedural default rule to address such situations: "a [movant] generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else [he] is barred from presenting the claim in a § 2255 proceeding." *Lynn*, 365 F.3d at 1234; *Hill v. United States*, 317 F.

App'x 910, 913-14 (11th Cir. 2009). Since Baird's claims are defaulted, the Court need not consider them on the merits unless he can establish cause and prejudice excusing his default (or establish his actual innocence of the crimes). *Lynn*, 365 F.3d at 1234 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *United States v. Nyhuis*, 211 F.3d 1340 (11th Cir. 2000).

Baird has not even attempted to establish cause or prejudice, nor has he come close to showing that actual innocence should excuse his procedural default of these claims.[3] Accordingly, the claims must be denied. However, even if the bar did not apply, the grounds are clearly meritless.

In Ground 2, Barid asserts that the government withheld certain exhibits introduced at trial, including business records maintained by Highmark Insurance related to his claim on the Liberty County life

---

[3] To come within that "exceedingly narrow" exception, *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2007), a movant must present "new reliable evidence" establishing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Baird has offered no new reliable evidence suggesting his innocence, so his procedural default cannot be excused on that ground.

insurance policy on his wife. (Doc. 1-1 at 11; trial exs. 17-30.) Baird asserts that he first saw the exhibits when Aldridge showed them to him on the second day of his trial. (Doc. 1-1 at 11.) While Baird may not have seen the documents until trial, the record clearly shows that the government provided them to Baird's attorney four days before trial commenced, just after the government received them from Highmark. (Cr. doc. 106 (trial transcript) at 13.) The prosecution simply did nothing wrong on these facts.[4]

---

[4] One supports a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), with evidence that: (1) the prosecution possessed evidence favorable to defendant, because it was either exculpatory or impeaching, yet did not disclose it to the defense; or (2) the prosecution suppressed evidence such that the defense did not otherwise possess evidence and could not reasonably have obtained it; and (3) the evidence was material, and its absence yielded prejudice. *Gary v. Hall*, 558 F.3d 1229, 1255 (11th Cir. 2009). "Evidence is material so as to establish prejudice only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotes and cite omitted); *see also United States v. Rafferty*, 296 F. App'x 788, 795-96 (11th Cir. 2008) (Government's suppression of allegedly exculpatory *Brady* evidence of interview with third-party bank account holder, explaining that most funds passing through account benefitted someone besides defendant, did not deprive him of due process at his trial for conspiracy to commit securities fraud, conspiracy to commit mail fraud and wire fraud, and two counts of wire fraud by diverting investors' funds, since there was no real probability of different outcome of trial if evidence had been admitted in defendant's favor, due to remaining witnesses and other evidence before jury to support defendant's fraudulent funneling of funds to other accounts); *United States v. Jordan*, 316 F.3d 1215, 1224-25 (11th Cir. 2003) (*Giglio* requires the prosecution to turn over to the defense evidence in its possession or control which could impeach the credibility of an important prosecution witness). Here, the evidence was handed over prior to trial, the day after it came into the government's possession.

In Ground 3, Baird claims that the government altered and invented certain documents which were later used to convict him, and he has sent letters to various companies and officials seeking evidence that the documents were not authentic. (Doc. 1 at 4; doc. 1-1 at 4, 5, 15.) None of his requests bore any fruit. He does, however, point to one exhibit used at trial which he asserts was clearly fraudulent. (Doc. 1-1 at 15.) He states that a form, which bore his signature, used to initiate a claim for Nicolette's life insurance benefits under the Army policy was filed long before the date shown on the form. (*Id.*) In fact, according to Baird the original form was removed from discovery by the government with the assistance of Mr. Aldridge. (*Id.*) Of course, Baird does not have a copy of the "original" claim form. And according to Baird's trial testimony, there *was* no other claim form. He admitted that he signed and filed that very form with the Army. (Cr. doc. 107 at 104.) In other words, Baird either perjured himself at trial or is lying under penalty of perjury now. In any event, the Court credits his prior sworn testimony. *Cf. Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (representations of defendant at plea hearing carry a strong presumption of verity, and

subsequent presentation of conclusory allegations that are wholly incredible are subject to summary dismissal). Hence, this claim also fails.

B. **Ineffective Assistance of Counsel**

In addressing Baird's claims for ineffective assistance of counsel, the Court is guided by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which created a two-part test for determining whether counsel performed ineffectively. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. It is generally appropriate to look to counsel's performance throughout the

case in making such a determination. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, Baird must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008), *quoting Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Under the prejudice prong, Baird must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman*, 477 U.S. at 375; *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

Baird claims that his attorney: (1) "attempt[ed] to assassinate [his] character" (doc. 1-1 at 12); (2) assisted the government by covering up facts and giving the sentencing judge the impression he created false documents (*id.*); (3) lied to the Court about Baird's refusal to produce certain documents (*id.*); (4) failed to establish a Speedy Trial Act violation (*id.* at 14); (5) failed to properly establish the dates Baird was in Trinidad (*id.*); (6) failed to inform the Court that Baird tried to cooperate (*id.*); and (7) failed to raise certain unspecified issues with the Court. (*Id.*)

In his first IAC claim, Baird states that "[d]uring my pretrial and trial phase Mr. Aldridge, made several attempts to assassinate my character in the eyes of [the judge] by claiming my behavior is bizarre." (*Id.* at 12.) Specifically, he references the following conversation between Aldridge and the trial judge just before the trial commenced:

> MR. ALDRIDGE: -- this is bizarre behavior. I mean, I have only been a lawyer for 32 years, and I know you've been a judge for longer than that, but I've never encountered anything like this. And I also have a concern that, if he takes the stand, he is going to say some things probably about the defense of the case or just, you know, life in general.

(Doc. 1-1 at 18; cr. doc. 106 at 19.)

Far from attempting to "assassinate" Baird's character, the record shows that Aldridge was simply at a loss in how to handle his incredibly difficult client at trial. Read in context, the trial transcript shows that Aldridge was concerned about Baird's total lack of cooperation. For instance, Baird held exhibits that he believed to be relevant to his defense which he refused to hand over to his own attorney. (Cr. doc. 106 at 22.) Too, Baird endeavored to control every aspect of Aldridge's performance during the trial. (*Id.*) And the record shows that Baird was constantly back-channeling letters to the Court in an attempt to undermine Aldridge in hopes of obtaining a new attorney. (*See* cr. doc. 121.) Faced with the dilemma, the judge advised Aldridge to do his duty to act as Baird's attorney and not to act merely as a mouthpiece for his client. (Doc. 106 at 22.)

It certainly wasn't deficient performance for Aldridge to bring his concerns to the attention of the judge. Conflicts of this sort between attorneys and their clients arise with some frequency, and sometimes they lead to a client acting out and disrupting a trial. Indeed, it was Aldridge's duty to bring his concerns to the trial judge's attention, out of

the presence of the jury and even if Aldridge performed deficiently by raising his concerns, Baird has not pointed to any conceivable prejudice resulting from the alleged "character assassination." He was adjudged guilty by a *jury*, not by the trial judge. Too, he was sentenced by a different judge, after the trial judge passed away. (Cr. doc. 122.)

In his second IAC enumeration, Baird claims that "Mr. Aldridge, [provided] assistance to the Government, to cover up facts in my case and gave the impression to my sentencing judge, that I invented a series of documents." (Doc. 1-1 at 12.) Baird, however, has failed to point to any facts that Aldridge covered up or exactly how he assisted the government. While he attaches a series of transcript pages, he has not referenced any in his "brief" and the Court will not construct the claim for him.[5] His conclusory allegations simply do not merit relief.

---

[5] Upon thoroughly reviewing the sentencing transcript, the Court is of the opinion that Aldridge vigorously fought for his client. (Cr. doc. 122.) The only reference to any "invented" documents came from the judge directly. He noted:

> Rarely have I ever seen a record that discloses the perjury that was committed by the defendant. The documents that were contrived, forged, representing supposedly the acts of officials in Trinidad were submitted. And everyone who investigated the case, according to Mr. Baird, committed perjury. . . .
>
> He has shown no remorse for the offense. In my belief he continually tries to manufacture fraudulent documents to give to the Court or his counsel. I don't

*See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)); *see also United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991) (no hearing required where movant's allegations fail to satisfy the prejudice prong of the *Strickland* ineffective assistance of counsel test); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations).

Baird next insists that Aldridge "made several attempts to lie about issues before the Court." (Doc. 1-1 at 12.) He cites as an example Aldridge's statement that Baird failed to provide him with documents when those documents were actually already provided from the government in discovery. (*Id.*) He appears to refer to the same pretrial

---

know what he has given his counsel. But anything received from Mr. Baird has to be examined very acutely to make sure that it is not a forged document or that has completely been before authored by him.

(*Id.* at 34-35.)

12

conference discussed in his first IAC claim. There, the judge noted that Aldridge had told him that Baird was holding secret documents he had not shown to Aldridge. (Cr. doc. 106 at 21.) Again, Baird has not identified the documents, much less explained why Aldridge would lie about them. To the extent the claim is not conclusory, it fails because Baird does not come close to showing that Aldridge's "lie" about the documents prejudiced him at trial.

In his fourth IAC claim, Baird contends that Aldridge failed to provide documents showing why the Speedy Trial Act was violated. (Doc. 1-1 at 14.) In sum, Baird claims that his attorney failed to adequately argue that the Speedy Trial Act had been violated by a government continuance to bring witnesses from Trinidad and Tobago when the government did not actually bring the witnesses. (*Id.*) Aldridge, however, *did* argue that the continuance led to a violation of the Speedy Trial Act:

> If there has not been a violation of the Speedy Trial Act, there hasn't been a violation. But I believe that there absolutely has, and that was the concern back at the time. Accordingly, you entered some language in that order [on the continuance motion] which extended the speedy trial [deadline]; but if the underlying

grounds for that continuance did not exist or do not exist, I believe that this defendant has been deprived of his rights.

(Cr. doc. 106 at 9.) The trial judge denied the motion. (*Id.* at 11.) Since Aldridge raised the claim, Baird can hardly show deficient performance.[6]

In his fifth claim, Baird claims that Aldridge was ineffective for failing to establish the dates that Baird was actually in Trinidad. (Doc. 1-1 at 14.) According to Baird, the information would have aided the jury and Court in understanding that Baird was not present for the "supposed loan application and deposit." (*Id.*) Again, Baird has mischaracterized the record. At trial, Baird himself testified that he was not in Trinidad on those dates:

> Q Would you like to tell the jury about the opening of that bank account?
>
> A That bank account was opened on the 25th of October. That's when they basically said I did a loan application for that house and I opened a bank account. I did not open a bank -- I was not in Trinidad. I did not open any bank account, and I did no loan application. The check says the 25th on it. When I got the Trinidad after the 11th -- I'm sorry, after the 16th of November, I

---

[6] The Court rejects the government's alternate contention that Baird does not merit relief because he has simply repackaged his earlier Speedy Trial Act claim as a claim for ineffective assistance of counsel. (Doc. 144 at 18.) A claim for ineffective assistance of counsel is fundamentally different from a Speedy Trial Act claim.

> deposited a check in the bank. Now, what happened, as I explained to my attorney, when Mr. Swiatek got down there, Nicolette['s] aunt actually is the director of the bank. And they were able to fix the dates to put me in the scenario.

(Cr. doc. 107 at 100.) Hence, even if Aldridge performed deficiently (he didn't), Baird cannot show prejudice. Aldridge had Baird explain to the jury that he wasn't present in Trinidad on those dates.

Sixth, according to Baird, Aldridge also failed to show at sentencing that Baird had voluntarily surrendered himself and attempted to clear up the situation. (Doc. 1-1 at 12.) Indeed, Baird attempted to resolve the charges against him while in Trinidad by contacting the U.S. Embassy there. (Doc. 1 at 5-6; doc. 1-1 at 12.) He offers a memo explaining his contact with a marine lieutenant stationed at the Embassy. (*Id.*) Too, he states that there was no warrant of extradition, so he returned voluntarily. (*Id.*) Yet Aldridge, Baird complains, allowed the government to incorrectly characterize him as a "fugitive on the run." (Doc. 1-1 at 12.)

The government has offered contrary evidence. (Doc. 144-1 at 1-13.), including Baird's Trinidad and Tobago Judiciary extradition hearing transcript:

> HIS WORSHIP: What the requesting State is saying, is that they were trying to get you to go voluntarily, but they were not getting anywhere, and as a result they've had to resort to extradition proceedings.
>
> ACCUSED: Sir, before this matter, I never heard of an extradition.
>
> HIS WORSHIP: Well, that is what I am telling you. Consul for the requesting State, that is the United States Government, he has submitted to the Court that they were trying to get you to return of your own volition, of your own free will, but they were getting nowhere. As a result they had to institute these proceedings, to compel you to return.
>
> ACCUSED: Sir, I am the one who went to Mr. Freeman and Mr. Swytech, you know. I went to them, presented myself, the documents...
>
> HIS WORSHIP: They are not denying that, what they are saying is, that you agreed -- they were trying to get you to go on your own, without having to come here. Let me just ask you something, now that you are here -- will you consent to go to the United States to face those charges?
>
> ACCUSED: Yes, Sir.
>
> HIS WORSHIP: Will you consent to the extradition?
>
> ACCUSED: Yes, sir.

(Doc. 144-1 at 10.) So, although Baird cooperated in the end, his characterization of his cooperation was somewhat overstated. Too,

Baird's counsel *did* argue at sentencing that he cooperated with the investigation:

> MR. ALDRIDGE: Yes, sir. . . I was not there, and I certainly couldn't testify, but I had the firm impression that in Trinidad there were several contacts with the FBI agents, both Agent Swiatex and later on the resident agent, in which Mr. Baird voluntarily, you know, did contact them, and did communicate with them.

(Cr. doc. 122 at 28.) Again, Baird has failed to show deficient performance.

Moreover, he cannot show prejudice on these facts. Baird's "cooperation" was flimsy at best. The record shows that he had deluded himself into believing that he could simply talk his way out of the charges by manipulating those whom he voluntarily contacted in Trinidad. According to the sentencing judge, Baird

> is well steeped in fraud and with the cheek of a Hitler, he considers if you tell a lie long enough someone will believe it. So he has shown no remorse for the instant offense, and completely denies his involvement in these matters. And over and over and over again he has committed fraud on the Court, perjury, with absolutely no remorse.
>
> Not only that, as I indicated, he has accused several witnesses of committing perjury or making false statements under oath.

> Of course, there is also evidence that Baird committed additional fraudulent acts in Trinidad. So the nature and the circumstances of this offense calls for a sentence above the advisory guidelines range.
>
> I do wish to impose upon Mr. Baird the Court's belief that he is one of the most unrepentant and unreconstructive defendant[s] that has ever appeared before the Court. So the [above the United State Sentencing Guidelines recommended] sentence reflects the seriousness of the offense.

(Cr. doc. 122 at 35-36.) Based on this record, the Court simply cannot conceive of any showing Aldridge could have made that would have changed the sentencing judge's mind about the impact of Baird's "cooperation" with the United States authorities.

In his final ground, Baird generally contends that counsel was ineffective for "failing to show fax [sic] and raise issues before the Court, as it relates to evidence used to convict me." (Doc. 1 at 4.) To the extent this is a freestanding claim, it is insufficiently pled and due to be dismissed.[7]

---

[7] Baird also claims that government relied upon certain statements admitted from Romain Maharaj which it knew to be false. (Doc. 1-1 at 14.) The Court rejects the claim out of hand. The only evidence that these claims were false, or that the government had reason to know that it was relying upon false information, comes from Baird's unsworn, conclusory brief. (*Id.*)

## III. CONCLUSION

For the foregoing reasons, Baird's § 2255 motion (doc. 1) should be **DENIED**. Applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And since there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  7th  day of July, 2011.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA